UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVSION

**Sudesh Ebenezer**, M.D., an individual,

    Plaintiff,

v.

**Hurley Medical Center**, a
Michigan Municipal Corporation,

    Defendant.
_____/

Case No.: 2:25-cv-13145

**COMPLAINT**

**JURY DEMAND**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Sudesh Ebenezer, M.D. (hereinafter "Plaintiff" or "Dr. Ebenezer") by and through the undersigned counsel, hereby files this Complaint against, Hurley Medical Center (hereinafter "Defendant" or "Hurley"), a Michigan municipal corporation and alleges as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and 42 U.S.C. § 1983, as this action involves federal questions regarding violations of Plaintiff's First Amendment rights.

2. This Court has supplemental jurisdiction over Plaintiff's tortious interference claim pursuant to 28 U.S.C. § 1367, as these claims are so related to Plaintiff's federal claims that they form part of the same case or controversy.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(1) and (2) because Defendant resides in this District a substantial part of the events giving rise to these claims arose in this District.

## PARTIES

4. Plaintiff provided professional neurosurgery services to Defendant on an on-call basis through contractual agreements.

5. Defendant is a publicly owned hospital and Level I Trauma Center—the American College of Surgeons' most prestigious designation for trauma care. Defendant provides care to thousands of Genesee County residents each year and is also one of the largest employers in Genesee County, providing thousands of jobs to local residents.

## FACTUAL ALLEGATIONS

6. Plaintiff repeats and realleges all allegations contained in paragraphs one (1) through five (5) of the Complaint as if fully restated herein.

7. On June 1, 2015, Dr. Ebenezer and Hurley entered into a Physician Service Agreement under which Dr. Ebenezer provided professional neurosurgery services to Hurley's Emergency Department on an on-call basis. **Exhibit 1**.

8. On March 17, 2017, Dr. Ebenezer and Hurley terminated their agreement so Dr. Ebenezer could, and did, sign onto a new contract between Hurley and the Shah Practice group, ("Hurley-Shah New Call Agreement"), whereby Dr. Ebenezer would provide professional neurosurgery services to Hurley on an on-call basis as an employee of the Shah practice group. *See* **Exhibit 2**.

9. Dr. Ebenezer faithfully and dutifully performed all medical neurosurgical services. As a result, the New Call Agreement was extended on multiple occasions, and he continued to provide neurosurgery services to Hurley through his employment with the Shah Practice Group.

10. On the evening of December 9, 2022, Plaintiff was called to help provide treatment to a twelve (12) month old child ("the child") who had been admitted with a traumatic head injury.

11. Upon his arrival, Plaintiff was alarmed because numerous routine diagnostic testing and radiological analysis had yet to be performed, preventing him from immediately operating on the child. Specifically, Plaintiff noted that Hurley staff failed to obtain a CT scan of the child's head despite being advised to do so, failed to obtain coagulation labs to assess whether the child's blood was properly clotting, failed to correct gross coagulation abnormalities, failed to correct ongoing high $pCO_2$ levels, and failed to obtain chest imaging in a timely fashion.

12. As Plaintiff prepared for surgery, Hurley's trauma staff notified him

3

that his surgery was cancelled because the child had been medically evacuated to another hospital. In reality, the child was still at Hurley—staff had simply lost track of the patient.

13. Unfortunately, the child passed away on December 10, 2022.

14. Throughout December 9, 2022, and December 10, 2022, Dr. Ebenezer communicated his grave concerns regarding patient safety and quality of care to multiple Hurley employees, including but not limited to, the attending trauma surgeon, members of the trauma team, and physician assistants.

15. Five (5) days later, on December 15, 2022, Leo Mercer ("Mercer"), Hurley's Trauma Medical Director, retaliated against Plaintiff by adversely changing Plaintiff's membership in the Medical Center Neurosurgery Trauma Panel on false and pretextual claims. **Exhibit 3** ("retaliation letter").

16. The retaliation letter called into question "the timeliness" of Plaintiff's response and his "engagement of care of the patient as the on-call neurosurgeon implicated both patient safety and quality of care concerns." No details were offered. *Id*.

17. In reality, Plaintiff's response was timely, and his engagement in the care of the referenced patient was within the requisite standard of care.

18. The retaliation letter made serious allegations and adversely changed Plaintiff's status, curiously the retaliation letter did not revoke Plaintiff's medical

4

privileges at Hurley and Plaintiff retained his ongoing role as the head of neurosurgery. Likewise, the alleged incident was never reported to the National Practitioner Databank, nor was there a review by the Medical Executive Committee. Essentially, although Hurley accused Plaintiff of malpractice, it took no further formal action beyond removing him from the panel. *Id*.

19. The pretextual action improperly interfered with and/or disrupted Plaintiff's employment relationship with the Shah Practice Group, because by removing Plaintiff from the Trauma Panel, the Shah Practice Group could no longer bill Hurley for Plaintiff's services.

20. As a result, the Shah Practice Group could not afford to provide Plaintiff with the income it previously provided him. On January 25, 2023, the Shah Practice Group lowered Dr. Ebenezer's income by more than sixteen times. *See* **Exhibit 4**.

21. Additional circumstances help show evidence of pretext by Hurley. For example, on April 11, 2023, Plaintiff renewed his request for Hurley to conduct a Medical Executive Committee Review and a Hospital Peer Review Committee investigation, but the request was ignored.

22. Straying from its customary practice, Hurley also held a Morbidity and Mortality Round regarding the passing of the child, without inviting Dr. Ebenezer.

23. Hurley blamed Plaintiff, an independent contractor, for the patient care

5

incident at issue to silence his complaints and pass the blame onto him, as opposed to implicating its direct employees of its prestigious Level I Trauma Center. In doing so, Hurley, *inter alia*, violated Plaintiff's First Amendment rights and tortiously interfered with his business relationship, expectancy, and contract with the Shah Practice Group.

24. Discovery will show Plaintiff responded as directed and mandated by the Contract on the night of December 9, 2022. Discovery will also show, Plaintiff's response to the December 9, 2022, call was consistent with, if not identical, to all other calls to which he responded during the entirety of the Contract.

25. Discovery will show at no time prior to the night of December 9, 2022, did Hurley ever raise questions or concerns regarding the timeliness of any response to calls to Dr. Ebenezer.

26. Discovery will show Dr. Ebenezer raised specific concerns regarding medical care administered to the twelve (12) month-old child directly by Hurley staff *prior* to any adverse action taken against him.

### Count I: First Amendment Violation Through 42 U.S.C. § 1983

27. Plaintiff re-alleges and adopts paragraphs one (1) through twenty-six (26) as though set forth fully herein.

28. Defendant deprived Plaintiff of his constitutional rights, privileges, and immunities under color of state law, entitling Plaintiff to damages pursuant to 42

U.S.C. § 1983.

29. At all times relevant, Plaintiff was employed by the Shah Group, which contracted with Defendant, a governmental entity. Through this arrangement, Plaintiff held a valuable financial interest protected from governmental retaliation under the First Amendment. Acting as a private citizen concerned about public health, Plaintiff made statements regarding Defendant's substandard medical care—statements that addressed matters of public concern, including the health and safety of vulnerable Medicaid populations and the use of taxpayer funds. In response to these protected statements, Defendant subjected Plaintiff to adverse action.

30. The adverse action was motivated as a response to the exercise of Plaintiff's constitutional rights.

31. Plaintiff suffered damages as a result of Defendant's actions.

**WHEREFORE**, Plaintiff demands:

    a) Past and future earnings loss;

    b) Interest on past and future earnings loss;

    c) Impairment of earning capacity;

    d) Injunctive relief;

    e) Prejudgment interest;

    f) Costs and attorney's fees;

    g) Compensatory damages; and

      h)    For such other relief as the court may deem just and proper.

**Count II: Tortious Interference with a Business Relationship or Expectancy**

32. Plaintiff repeats and realleges all allegations contained in paragraphs one (1) through thirty-one (31) of the Complaint as if fully restated herein.

33. Plaintiff had a valid and ongoing business relationship or expectancy with the Shah Practice Group at the time of Defendant's interference.

34. The business relationship or expectancy had a reasonable likelihood of future economic benefit to Plaintiff, as evidenced by the preceding years of economic benefit to Plaintiff.

35. Defendant knew of the business relationship between Plaintiff and the Shah Group as Defendant contracted with the Shah Group, and Plaintiff provided services to Defendant on behalf of the Shah Group.

36. Defendant intentionally and improperly interfered with this business relationship or expectancy between the Shah Group by removing Plaintiff from the panel in retaliation for his protected speech.

37. Defendant's conduct was neither justified nor privileged and was motivated by a desire to conceal its own wrongdoing.

38. Defendant's conduct caused the Shah Group to disrupt their business relationship or expectancy with Plaintiff. *See* **Exhibit 4**.

39. Plaintiff suffered economic damages including loss of income and

professional opportunities.

**WHEREFORE**, Plaintiff demands:

a) Past and future earnings loss;

b) Interest on past and future earnings loss;

c) Impairment of earning capacity;

d) Injunctive relief;

e) Prejudgment interest;

f) Costs and attorney's fees;

g) Compensatory damages; and

h) For such other relief as the court may deem just and proper.

## Count III: Tortious Interference with a Contract

40. Plaintiff repeats and realleges all allegations contained in paragraphs one (1) through thirty-nine (39) of the Complaint as if fully restated herein.

41. Plaintiff had a valid contract with the Shah Practice Group at the time of Defendant's interference.

42. Defendant knew of the contract between Plaintiff and the Shah Group as Plaintiff provided services to Defendant on behalf of the Shah Group through their years of contractual dealings.

43. Defendant intentionally and improperly interfered with this contract by removing Plaintiff off the panel to hide its own malpractice.

44. The Defendant's conduct caused the Shah Practice Group to breach or terminate the contract with Plaintiff. *See* **Exhibit 4**.

45. Plaintiff suffered damages, including financial loss and reputational harm, as a result.

**WHEREFORE**, Plaintiff demands:

a) Past and future earnings loss;

b) Interest on past and future earnings loss;

c) Impairment of earning capacity;

d) Injunctive relief;

e) Prejudgment interest;

f) Costs and attorney's fees;

g) Compensatory damages; and

h) For such other relief as the court may deem just and proper.

## Count IV: Promissory Estoppel

46. Plaintiff repeats and realleges all allegations contained in paragraphs one (1) through forty-five (45) of the Complaint as if fully restated herein.

47. Defendant made a clear and definite promise to comply with all laws, rules, and regulations (collectively "laws"), including the doctrine of good faith and fair dealing and respecting the First Amendment, to induce Plaintiff provide on-call coverage and professional neurosurgery services.

48. At the time the promise was made, Defendant knew or reasonably expected Plaintiff to rely on it by continuing to provide professional neurosurgery services to its patients.

49. Plaintiff reasonably relied on Defendant's promise to comply with all laws, including those prohibiting retaliation for raising patient-safety concerns, because the hospital's written policies, compliance materials, and patient-safety protocols assured non-retaliation for safety reporting.

50. Plaintiff's reliance that Defendant would comply with all laws and not terminate him for putting patient safety first was to his detriment, resulting in a substantial loss of income and reputational harm.

51. Plaintiff was damaged as a result of his reliance.

**WHEREFORE**, Plaintiff demands:

    a) Past and future earnings loss;

    b) Interest on past and future earnings loss;

    c) Impairment of earning capacity;

    d) Injunctive relief;

    e) Prejudgment interest;

    f) Costs and attorney's fees;

    g) Compensatory damages; and

For such other relief as the court may deem just and proper.

## **JURY DEMAND**

Pursuant to Fed. R .Civ. P. 38(b), Plaintiff hereby demands a trial by jury.

Dated: October 6, 2025

                                            Respectfully submitted,

                                            /s/ *Ertis Tereziu*
                                            Ertis Tereziu (P84911)
                                            MORGAN & MORGAN, P.A.
                                            150 West Jefferson, Suite 1400
                                            Detroit, MI 48226
                                            Telephone: (313) 739-1953
                                            Email: etereziu@forthepeople.com